IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|      Plaintiff, | ) | Case No. 13-cv-4102 |
| | ) | |
| vs. | ) | |
| | ) | |
| THIRTY-TWO THOUSAND EIGHT | ) | |
| HUNDRED TWENTY DOLLARS AND | ) | |
| FIFTY-SIX CENTS ($32,820.56) | ) | |
| IN UNITED STATES CURRENCY | ) | |
| | ) | |
|      Defendant, | ) | |
| | ) | |
| and concerning | ) | |
| | ) | |
| CAROLE HINDERS and | ) | |
| MRS. LADY'S INC. | ) | |
| | ) | |
|      Claimants. | ) | |

## CLAIMANTS' OPPOSITION TO UNITED STATES'
## MOTION TO DISMISS WITHOUT PREJUDICE

The Court should exercise its discretion to dismiss this case *with* prejudice. Any subsequent action by the United States against the $32,820.56 in question would be barred by a recent change in the U.S. Treasury Department's enforcement policies and by federal statute. *See* Part I-A at p. 5 *below*. The United States also has zero evidence that Carole Hinders, or her business, are guilty of anything, including the crime of "structuring." *See* Part I-B at p. 7 *below*. It bears emphasis that no crime has been charged; and there is no ongoing investigation. Yet, the government requests permission to refile a civil forfeiture action based on its paper-thin "structuring" allegations. Under the circumstances, allowing the United States to dismiss

*without* prejudice would be manifestly unjust and would prejudice Carole's defense against the government's baseless charges. *See* Part II at p. 8 *below*. If the Court dismisses the case, whether with or without prejudice, the Court should retain jurisdiction to decide whether Carole is entitled to interest, attorneys' fees, and expenses under the Civil Asset Forfeiture Reform Act (CAFRA). *See* 28 U.S.C. § 2465(b).

## BACKGROUND

This case began in May 2013, when the Internal Revenue Service (IRS) obtained an ex parte warrant to seize $32,820.56 from the bank account of Mrs. Lady's Mexican Food—a restaurant owned and operated by Carole Hinders since 1977.[1] The restaurant recently closed, in November 2014, when Carole retired. Throughout its 38 years in operation, Mrs. Lady's accepted payment in cash and local checks only, which resulted in Carole making frequent cash deposits into Mrs. Lady's bank account. She routinely made these deposits in amounts less than $10,000 because her mother—who kept the restaurant's books until her passing nine years ago— told Carole that keeping cash deposits under $10,000 reduced paperwork, which the restaurant and bank would otherwise have to complete. Carole knew nothing of U.S. Treasury reporting requirements for cash deposits greater than $10,000 and was never informed about them by the government or her bank. Carole was not trying to prevent the Treasury from learning about her deposits and was not concerned if the Treasury did learn about them. Carole simply had a habit of depositing the money from Mrs. Lady's into the restaurant's bank account in amounts less than $10,000 for the legitimate business purpose of reducing bank paperwork. The government has never alleged that Carole obtained her money illegally, used the money for some illegal purpose, or failed to pay taxes.

---

[1] The factual background discussed in this response is supported by the attached Declaration of Wesley Hottot, the transcript of the deposition of Carole Hinders, and IRS memorandum.

The United States' allegations are based on the thinnest of rationales for how Carole "structured" her deposits. "Structuring" requires a person to break down cash deposits into amounts less than $10,000 in a knowing effort to evade U.S. Treasury reporting requirements. *See* 31 U.S.C. § 5324 (defining the crime of structuring); 31 C.F.R. § 1010.311 (setting $10,000 threshold); *see generally United States v. Sweeney*, 611 F.3d 459, 469-70 (8th Cir. 2010) (outlining the elements of the crime of structuring); *United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005) (same). But nowhere in this case has the government made a single factual allegation that Carole deposited Mrs. Lady's money with a knowing purpose to evade Treasury reporting requirements. Just the opposite is true; and the government knows it.

The United States informed Claimants that it wished to dismiss this case *with* prejudice the day after concluding Carole's deposition. It became overwhelmingly clear in that deposition that Carole did not know about, was not concerned about, and certainly had no purpose to evade Treasury reporting requirements. (Indeed, Carole sometimes made deposits in amounts greater than $10,000 because she was not concerned about the effect this might have.)

It also became clear in Carole's deposition that there is a material dispute of fact about what was said between Carole and IRS Agent Christopher Adkins, on whose written statements the United States bases its entire case. Carole denied making many of the statements that Adkins attributes to her. And Adkins was scheduled to be deposed the next day, when the United States presented Claimants with a written notice of dismissal *with* prejudice. Based on the government's representation that it would dismiss its case, Claimants agreed not to depose Adkins. When the United States then filed its mean-spirited motion to dismiss *without* prejudice, relying on the same disputed statements attributed to Adkins, Claimants requested that the

United States quickly make him available for deposition, but the government refused, and then moved for a stay of discovery pending the resolution of its motion.

Additionally, following Carole's deposition, Matthew J. Cole—the Assistant U.S. Attorney in charge—told Claimants that this case would not merit prosecution under a new IRS policy that prohibits the forfeiture of money from a "legal source," such as the money from the restaurant in this case, rather than from illicit activity. Heedless of these facts, however, the United States now asks for a dismissal *without* prejudice and labels its case "meritorious." The truth is that the government knows that its case is doomed and knows that it has wrongfully held Carole's money for more than a year and half. The government's request for a dismissal without conditions is a transparent effort to cover its retreat from this case, prevent the deposition of its agent, and attempt to undermine Carole's winning claim for interest, attorneys' fees, and expenses under CAFRA. *See* 28 U.S.C. § 2465(b).

## ARGUMENT

The Court should grant a dismissal *with* prejudice for two straightforward reasons. First, any attempt to refile this action would be futile, as the $32,820.56 at issue in this case could not ever again be the subject of civil forfeiture under both IRS policy and under a federal statute imposing strict timeliness requirements on claims involving fungible property, like the money at issue in this case. Second, there is zero evidence that Carole Hinders committed the crime of structuring—the government does not even allege that she had a knowing purpose to evade Treasury reporting requirements, thus defeating two essential elements that the government would be required to prove at trial. If the Court is unconvinced that dismissal *with* prejudice is warranted, however, Claimants ask that the Court deny the United States' motion outright and allow this case to proceed to a final decision.

# LEGAL STANDARD

The Court has discretion to grant or deny an opposed motion to voluntarily dismiss. *Donner v. Alcoa, Inc.*, 709 F.3d 694, 697 (8th Cir. 2013). The Court may also impose conditions on an opposed dismissal. Fed. R. Civ. P. 41(a)(2) ("an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper"); *see also Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1078 (9th Cir. 1999) (explaining the difference between a dismissal as of right, on which no conditions may be imposed, and a discretionary dismissal, on which conditions may be imposed). The factors the Court should consider in deciding whether to allow a voluntary dismissal include:

> [W]hether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendants. Likewise, a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum.

*Donner*, 709 F.3d at 697 (quoting *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213-14 (8th Cir. 2011)). In this case, the Court should exercise its discretion to either dismiss the government's case *with* prejudice or deny its motion outright to allow for further proceedings and a decision on the merits.

## I. THIS CASE SHOULD BE DISMISSED WITH PREJUDICE TO REFILING.

### A. The $32,820.56 At Issue In This Case Cannot Be Subject To Another Forfeiture Action.

The principal reason this case should be dismissed *with* prejudice is that it would be futile for the United States to seek the civil forfeiture of the same money again in the future. There are two independent reasons for this—one based on a new IRS policy aimed at reining in the very sort of forfeiture abuse displayed by this case; and the other based on federal law.

First, two months ago, the IRS changed its policy for structuring cases. The agency's new policy prohibits the seizure and forfeiture of money believed to have been derived from a legal source—such as Carole's restaurant business—absent "exceptional circumstances." The government has not disputed that the $32,820.56 seized from Mrs. Lady's bank account represents the lawful earnings from Mrs. Lady's Mexican Food. The only issue is whether that money was "structured" when it was deposited in the bank (and it was not). This case can only be pursued today because the IRS's policy expressly exempts cases pending at the time the new policy was issued (October 17, 2014). It is plain, however, that this case would not be pursued as a new case in the future under the new policy.

Second, under federal statutes, the government must file an action for the civil forfeiture of cash within one year of the alleged offense, or else it must prove that every dollar can be directly traced to a forfeitable offense. 18 U.S.C. § 984(b); *see United States v. Jennings*, 487 F.3d 564, 586 (8th Cir. 2007). The government filed this case on October 24, 2013—within one year of May 22, 2013, when the IRS emptied out Mrs. Lady's bank account, and the account was shortly thereafter closed. It follows that, in this case, the government is not required to trace every one of the dollars and cents seized from Mrs. Lady's directly to a "structured" deposit—it is enough that the government alleges money was "structured" into the account at some time between October 25, 2012, and October 24, 2013. *See* 18 U.S.C. § 984(a). In any future case, however, the government *would be* required to prove that all $32,820.56 was involved in a structured deposit. *See* 18 U.S.C. § 984(b). Even in the present case, the government has failed to properly allege a single structuring offense—based on zero factual allegations, the government only makes the bare legal conclusion that Carole was trying to evade Treasury reporting requirements. *See* Aff. of Christopher Adkins (Dkt. 1-2) ¶ 27. There is no realistic chance that,

in some future case involving the same $32,820.56, the government would be able to satisfy the strict traceability requirements of Section 984(b). If the government's case is paper-thin now (and it is), the government cannot in the future plausibly tie every penny of the same $32,820.56 to a crime that never occurred.

**B.     There Is Zero Evidence To Support Two Essential Elements Of Structuring—Carole Hinders Did Not Know About And Was Not Concerned About Treasury Reporting Requirements.**

The real reason the government is moving to dismiss this case is that the government knows that its claims are doomed. Carole Hinders could not possibly have "structured" her deposits because she did not know about, and has never tried to evade, Treasury reporting requirements. At Carole's deposition last week, this became crystal clear:

> Q. So when you were talking to Agent Adkins about the reporting requirement, you were going off of the information your mother provided you some years before?
> A. Correct.
> Q. All right. So you didn't know that the bank had a reporting requirement?
> A. No.
> Q. You thought the bank just had to do paperwork.
> A. I thought it was internal bank paperwork. I didn't — I didn't think about it much except in making my deposits, and that kind of became a habit, I guess.

Depo. of Carole Hinders at 49:18-50:6.

> Q. So you have no concerns then if the bank does any reports.
> A. No, I don't.
> [. . .]
> Q. Right. And so the deposits purely got broken down to avoid the internal paperwork of the bank.
> A. Correct.

*Id.* at 52:1-23.

A person does not violate any law by breaking down her cash deposits in order to avoid internal bank paperwork. It is only "structuring" to break down cash deposits while knowing about, and trying to avoid, U.S. Treasury reporting requirements. *See, e.g.*, *United States v.*

*Leak*, 123 F.3d 787, 793-95 (4th Cir. 1997) (reversing grant of summary judgment to

government because property owners had legitimate business reasons for depositing less than

$10,000 at a time); *United States v. Baydoun*, 984 F.2d 175, 177, 181 (6th Cir. 1993) (criminal

defendant presented $16,700 in cash for deposit; when told by a teller that she would have to fill

out a "form," defendant reduced the transaction to $3,000 and deposited the rest in small sums;

yet, there was no evidence of a "purpose to evade" because the defendant thought she was

avoiding bank paperwork, not government requirements); *United States v. $255,427.15 in United*

*States Currency*, 841 F. Supp. 2d 1350, 1356-59 (S.D. Ga. 2012) (denying government's motion

for summary judgment despite 286 cash transactions of $9,000 by owner of convenience store

because the court could not conclude from the sheer volume of transactions that the store owner

knew about and was trying to avoid Treasury reporting); *United States v. $79,650.00 Seized*

*From Bank of America Account*, No. 1:08-cv-01233, 2010 U.S. Dist. LEXIS 30608, at *8-14,

2010 WL 1286037, at *4-5 (E.D. Va. Mar. 29, 2010) (denying summary judgment to

government although claimant admitted knowing that the bank had to fill out a form if he

deposited more than $10,000 because he did not know it was a government form).

     Carole could not have committed the crime of structuring for the simple reason that she

did not know about the Treasury reporting requirements.  She could not have attempted to evade

that which she did not know existed.  For these reasons, it would be pointless to give the

government permission to refile this case at a later time, and the Court should, instead, dismiss

the case with prejudice to refiling.

## II.    ALTERNATIVELY, THE MOTION TO DISMISS SHOULD BE DENIED.

     If the Court decides not to dismiss the case *with* prejudice, Claimants alternatively ask the

Court to deny the government's motion and allow the case to proceed to a decision on the merits.

It would fundamentally prejudice Carole Hinders' defense to allow the United States to refile this case at some indeterminate date in the future. The memories of key witnesses will fade. In particular, the memory of the government's only witness will fade. Agent Adkins may not later remember what was said between him and Carole, and his written statements may therefore escape cross-examination based on his own memory of events. Carole is currently represented by *pro bono* counsel, but she may not be in future proceedings. *Pro bono* counsel is essential to Carole's defense because the $32,820.56 at issue is a small sum compared to the enormous expense of litigating against the United States. The government may be hoping that Carole's *pro bono* counsel will go away and that the public scrutiny currently shining on this case will dim with time. The government may also be forum shopping for another judge.

Most importantly, granting a dismissal *without* prejudice would leave Carole fearful that she will be subject to ongoing investigation and harassment by the IRS. After wrongfully seizing her money and holding it for over a year and half, accusing Carole of criminal conduct, causing all sorts of problems for Carole and her business, and damaging her reputation, the United States now asks the Court for permission to escape from this case while still defending its position and preserving its ability to proceed against Carole again in the future. Rather than face these insults, delays, and uncertainties, Carole would rather resolve this case on the merits now. She did nothing wrong, has nothing to hide, and would welcome an opportunity to clear her good name, once and for all.

## CONCLUSION

For these reasons, Claimants ask the Court to enter a judgment of dismissal of the United States' claims *with* prejudice to their refiling or, in the alternative, to deny the motion and allow this case to proceed to a decision on the merits. If the Court dismisses the case, whether with or without prejudice, Claimants ask the Court to retain jurisdiction for the purpose of deciding

whether interest, attorneys' fees, costs, and expenses should be awarded under 28 U.S.C. § 2465(b).

RESPECTFULLY SUBMITTED this 17th day of December, 2014.

**INSTITUTE FOR JUSTICE**

By: _/s/ Wesley Hottot_____
Wesley Hottot (WA Bar No. 47539)*
Institute for Justice
10500 NE 8th Street, Suite 1760
Bellevue, WA 98004-4309
(425) 646-9300
(425) 990-6500 (fax)
whottot@ij.org

Lawrence G. Salzman (CA Bar No. 224727)*
Institute for Justice
901 Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)
lsalzman@ij.org

James L. Benz, LI0000360
15357 212th Ave
Spirit Lake, IA 51360
Phone: (712) 336-2090
Fax:  (712) 754-2458
E-mail: jlb.law@mchsi.com

*Attorneys for Claimants*

* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on December 17, 2014, this document—Claimants' Opposition to United States' Motion to Dismiss Without Prejudice—and the three attached exhibits were served on the following using the Court's CM/ECF system:

Matthew J. Cole
U.S. Attorney's Office
Northern District of Iowa
111 7th Avenue, SE
Box 1
Cedar Rapids, IA 52401
Email: Matt.Cole@usdoj.gov

   /s/ Wesley Hottot           
Wesley Hottot
