IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. C13-4102-LTS |
| | ) | |
| vs. | ) | |
| | ) | |
| THIRTY-TWO THOUSAND EIGHT | ) | |
| HUNDRED TWENTY DOLLARS AND | ) | |
| FIFTY-SIX CENTS ($32,820.56) | ) | |
| IN UNITED STATES CURRENCY | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and concerning | ) | |
| | ) | |
| CAROLE HINDERS and | ) | |
| MRS. LADY'S INC. | ) | |
| | ) | |
| Claimants. | ) | |

## CLAIMANTS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INTEREST

NOW COME the Claimants, Carole Hinders and Mrs. Lady's, Inc., by their counsel, and move pursuant to Local Rule 54.1 and 28 U.S.C. § 2465(b)(1)(A) for an award of attorneys' fees and litigation costs incurred in this matter and, pursuant to 28 U.S.C. § 2465(b)(1)(B)-(C), for pre-judgment and post-judgment interest on the funds seized by the Government. As the substantially prevailing party in this matter, Claimants are entitled to an award of reasonable attorneys' fees, reasonable litigation costs, and interest.

RESPECTFULLY SUBMITTED this 4th Day of February, 2015.

**INSTITUTE FOR JUSTICE**

By:  /s/ Lawrence G. Salzman
Lawrence G. Salzman (CA Bar No. 224727)*
Institute for Justice
901 Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)
lsalzman@ij.org

Wesley Hottot (WA Bar No. 47539)*
Institute for Justice
10500 NE 8th Street, Suite 1760
Bellevue, WA 98004-4309
(425) 646-9300
(425) 990-6500 (fax)
whottot@ij.org

*Attorneys for Claimants*

* Admitted *pro hac vice*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. C13-4102-LTS |
| | ) | |
| vs. | ) | |
| | ) | |
| THIRTY-TWO THOUSAND EIGHT | ) | |
| HUNDRED TWENTY DOLLARS AND | ) | |
| FIFTY-SIX CENTS ($32,820.56) | ) | |
| IN UNITED STATES CURRENCY | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and concerning | ) | |
| | ) | |
| CAROLE HINDERS and | ) | |
| MRS. LADY'S INC. | ) | |
| | ) | |
| Claimants. | ) | |

---

**BRIEF IN SUPPORT OF CLAIMANTS' MOTION FOR
ATTORNEYS' FEES, COSTS, AND INTEREST**

---

# TABLE OF CONTENTS

Table of Authorities ...............................................................................................................5

Introduction ...........................................................................................................................7

Facts .......................................................................................................................................7

Argument ..............................................................................................................................10

      I.      Claimants Are Entitled to an Award of Fees and Costs Because They
            Substantially Prevailed in This Action ...................................................................10

      II.     The Requested Fee Award Reflects a Reasonable Number of Hours,
            Reasonable Hourly Rates, and the Exercise of Appropriate Billing Judgment .....11

            A.  Compensation Is Sought for Hours Reasonably Expended ...........................12

                 i.    Local Counsel ...................................................................................13

                 ii.   Institute for Justice ...........................................................................13

            B.  The Requested Hourly Rates Are Reasonable .................................................16

      III.    Claimants Are Entitled to Reasonable Litigation Costs ........................................18

      IV.    Claimants Are Entitled to Pre- and Post-Judgment Interest on Seized
            Currency.................................................................................................................19

Conclusion ...........................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396 (D.C. Cir. 1986)...................... 17

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................................. 12, 17

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*,
    532 U.S. 598 (2001)....................................................................................................... 10

*Hanig v. Lee*, 415 F.3d 822 (8th Cir. 2005).................................................................... 11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .......................................................... 11, 12

*Jones v. Casey's Gen. Stores*, 551 F. Supp. 2d 848 (S.D. Iowa 2008) ........................................ 11

*Kadonsky v. United States*, 3 Fed. Appx. 898 (10th Cir. 2001)........................................ 19

*Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014)........................................................ 17

*Missouri v. Jenkins*, 491 U.S. 274 (1989)........................................................................ 18

*People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307 (7th Cir. 1996)................................ 17

*Rural Water Sys. No. 1 v. City of Sioux Center*, 38 F. Supp. 2d 1057 (N.D. Iowa 1999) ........... 18

*Scales v. J.C. Bradford & Co.*, 925 F.2d 901  (6th Cir. 1991)...................................... 17

*Sole v. Wyner*, 551 U.S. 74 (2007)................................................................................. 10

*Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987)........................................................ 17

*St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*,
    574 F.3d 1054  (9th Cir. 2009) ..................................................................... 10

*United States v. $186,416.00*, 642 F.3d 753 (9th Cir. 2011) ....................................... 12

*United States v. $60,201.00 U.S. Currency*, 291 F. Supp. 2d 1126 (C.D. Cal. 2003) ................. 12

*United States v. One 2008 Toyota Rav 4*, No 2:09-cv-05672-SVW-PJW,
    2012 WL 5272281 (C.D. Cal. Oct. 18, 2012)......................................................... 18

*United States v. One Star Class Sloop Sailboat*, 546 F.3d 26 (1st Cir. 2008)............................ 17

*Warnock v. Archer*, 397 F.3d 1024 (8th Cir. 2005) ....................................................... 12, 17, 18

**Statutes and Codes**

18 U.S.C. § 983(a)(3)(B) ................................................................................................ 11

28 U.S.C. § 2465(b)(1) ............................................................................................. 11, 20

28 U.S.C. § 2465(b)(1)(A) ........................................................................................ 10, 18

28 U.S.C. § 2465(b)(1)(B) ........................................................................................ 10, 19

28 U.S.C. § 2465(b)(1)(C) ............................................................................................. 10

28 U.S.C. § 2465(b)(1)(C)(i) ......................................................................................... 19

28 U.S.C. § 2465(b)(1)(C)(ii) ........................................................................................ 19

42 U.S.C. § 1988 ........................................................................................................... 17

**Other Authorities**

Board of Governors of the Federal Reserve, *Selected Interest Rates (Weekly)*
(January 9, 2015) ..................................................................................................19

# INTRODUCTION

Claimants Carole Hinders and Mrs. Lady's, Inc., herein seek an award of $71,173.75 in attorneys' fees and $4,057.63 in costs reasonably incurred fighting the Government's attempt to forfeit the funds seized from Ms. Hinders' restaurant's bank account. These costs were made necessary by the Government's persistence in pursuing this case long after it should have been plain to it that Ms. Hinders was innocent of any illicit activity. Ms. Hinders did not initiate this litigation, she did not control when it ended, and she made every effort to demonstrate to the Government that it was not justified. Rather, Ms. Hinders' money was seized without warning and she was falsely accused of felony financial crimes that implied frightening penalties. She had her business upended and her reputation in her community put at risk. And she, therefore, took reasonable steps to stand up for herself: To clear her name and get her money back by winning a case that the Government brought to her literal front door in May 2013, when two IRS agents arrived at her home during Ms. Hinders' breakfast with her grandchildren to tell her that they had just seized the entire contents of her restaurant's bank account.

# FACTS

On May 22, 2013, the IRS executed a seizure warrant taking the entire contents of Mrs. Lady's, Inc.'s bank account in the amount of $32,820.56. More than five months later, on October 24, 2014, the United States filed a Verified Complaint for Forfeiture [ECF No. 1] seeking a judgment from this Court that the seized funds be forfeited to the United States. Mrs. Lady's, Inc. and Carole Hinders filed a claim for the money with this Court on November 13, 2013 [ECF Nos. 4 & 5] and an Answer to the Government's Complaint [ECF Nos. 6 & 7] on November 22, in which they denied the Government's allegation that the seized funds had been "structured" in violation of federal law and pleaded affirmative defenses. On December 13,

2014, the Government filed a motion for voluntary dismissal of its forfeiture complaint [ECF No. 25], which the Court granted pursuant to Federal Rule of Civil Procedure 41(a)(2) on January 9, 2015 [ECF No. 30].

During the approximately 19 months between the seizure and the dismissal of the action, the Government pursued its litigation against Ms. Hinders.  It persisted despite acknowledging early on that the money she supposedly structured was earned from Mrs. Lady's, the small Mexican restaurant she owned and operated in Arnolds Park, Iowa, for the past 37 years without prior incident or trouble from the IRS or any other governmental authority.  At no time did the Government ever allege that the seized funds were the proceeds of any illicit activity.

Soon after the seizure Mrs. Hinders met with a local attorney, Mike Bovee, who she trusted to help her with various business matters in past years.  Ex. A ("Hinders Decl.") ¶ 2.  Mr. Bovee corresponded with and met with an Assistant U.S. Attorney to explain Ms. Hinders' business and to seek an early resolution to the case.  *Id*. ¶ 3.  The Government proceeded to file its Complaint.  In furtherance of settlement, Mr. Bovee worked with Ms. Hinders and her accountant to produce accounting and other records for the Government in an effort to demonstrate her compliance with tax laws and to explain her legitimate purposes for her banking practices.  *Id*. ¶ 4.  Nevertheless, the Government pressed on.

Suffering under the Government's continued allegation that she was guilty of felony conduct and at risk of losing her entire bank account, Mr. Bovee referred the case to a second, local attorney, Jim Benz, who was admitted to federal court and able to file an Answer and preserve her rights.  *Id.* ¶ 5.  Mr. Benz likewise sought an early resolution to the case—deferring discovery and related expenses to provide time for the Government to do the right thing.  *Id*.

Faced with the prospect of an imminent trial that would likely cost more than everything

seized from her, and frightened by continued accusations of felony conduct, Ms. Hinders sought *pro bono* representation from counsel with significant civil forfeiture and trial experience, at the Institute for Justice. *Id.* ¶ 6. The Institute took on the case, beginning discovery and preparing for trial.

At several points during discovery, Institute attorneys met with the Government to explain why Ms. Hinders was not guilty of structuring, why the forfeiture was unjust, and to consider the possibility of a pre-trial resolution of the case—including the possibility that IJ would waive any claim for attorney fees if the case were dropped before substantial, additional time and expense were incurred. Ex. B ("Salzman Decl.") ¶ 9. The Government refused to entertain the idea of returning all of Ms. Hinders' money (it wanted to keep some of it) even while acknowledging that it had no evidence to suggest that the money was the proceeds of any illicit activity. *Id.* As a result, Ms. Hinders and the Institute began discovery and preparation for a trial before this Court in an effort to get her money back and clear her name. That work included several trips from Virginia and Washington State (where the Institute has offices) to Iowa to investigate and gather materials, propounding two rounds of written discovery, preparing responses and voluminous financial records to respond to written discovery propounded by the Government, defending two depositions, and preparing to depose an IRS agent (which deposition was cancelled the night before it was to occur). *Id.* ¶¶ 10 & 14; Hottot Decl. ¶ 7.

When the government finally relented on the eve of the deposition of its agent and offered to drop the matter pursuant to a stipulation, it indicated it would do so with prejudice. *See* ECF No. 28-1 ¶ 6 (Hottot Decl. in Support of Claimants' Opp'n). When it filed its motion for voluntary dismissal [ECF No. 25], however, it moved for dismissal without prejudice, perhaps in the hope of undermining the present claim for reasonable fees and expenses.

Nonetheless, the result is plain: the dismissal of the case resulted in Claimants achieving most, if not all, of the relief sought by filing their claims with this Court on November 13, 2013 [ECF Nos. 4 & 5].

**ARGUMENT**

## I. Claimants Are Entitled to an Award of Fees and Costs Because They Substantially Prevailed in This Action.

The Civil Asset Forfeiture Reform Act of 2000 (CAFRA) provides that the United States shall be liable for "reasonable attorney fees and other litigation costs reasonably incurred" by a claimant who "substantially prevails" against the government in a civil forfeiture action. 28 U.S.C. § 2465(b)(1)(A). In cases involving currency, such as this case, the United States is also liable for pre- and post-judgment interest on the funds seized. 28 U.S.C. § 2465(b)(1)(B)-(C).

The Supreme Court has said that a "prevailing party" is one who achieves a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.,* 532 U.S. 598, 605 (2001). A party is prevailing if she "succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit." *St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009) (internal quotation and brackets omitted). "The touchstone of the prevailing party inquiry," according to the Supreme Court, is "the material alteration of the legal relationship of the parties." *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (internal quotation omitted).

The Claimants substantially prevailed in this case by successfully challenging the forfeiture of the contents of Ms. Hinders' restaurant's bank account and obtaining a court order dismissing the Government's forfeiture complaint. That order has effected a "material alteration of the legal relationship of the parties" by triggering a statutory obligation on the Government's

part to return every dollar seized from Mrs. Lady's bank account, which the Government had steadfastly refused to return for more than nineteen months. *See* 18 U.S.C. § 983(a)(3)(B). Moreover, there is no sense in which the government can be said to have prevailed in this action.

Ms. Hinders would have preferred a dismissal with prejudice, but what was achieved was nonetheless "a good outcome that could have been even better." Order Granting Mot. to Dismiss Jan. 9, 2015 at 8. As the Court noted, "[b]y dismissing this action [and possibly refiling in the future], USA would gain nothing while making its claim much more difficult to prove." *Id.* at 7. Accordingly, Claimants are entitled to an award of reasonable attorneys' fees and litigation costs, along with interest on the seized funds, under 28 U.S.C. § 2465(b)(1).

In the event that the Court believes that Claimants' entitlement to attorneys' fees is undermined by the dismissal without prejudice, it should reconsider its January 9, 2015 Order, pursuant to Federal Rule of Civil Procedure 54(b), and revise the Order accordingly. *See Jones v. Casey's Gen. Stores*, 551 F. Supp. 2d 848, 854 (S.D. Iowa 2008) (a "court may amend or reconsider any ruling under Rule 54(b) to correct any . . . manifestly erroneous findings of fact or conclusions of law" before final judgment) (internal quotations and citations omitted).

## II. The Requested Fee Award Reflects a Reasonable Number of Hours, Reasonable Hourly Rates, and the Exercise of Appropriate Billing Judgment.

Attorneys' fees under CAFRA are determined using a "lodestar" analysis, which entitles a claimant to a fee equal to "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) ("The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates.") (internal quotation omitted); *see also United States v. $186,416.00*,

642 F.3d 753, 754-55 (9th Cir. 2011) (attorneys' fees under CAFRA are calculated using the lodestar method).

A reasonable hourly rate is the rate that lawyers of comparable skill and experience can reasonably expect to command in the venue of the court of record. *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005) (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)); *United States v. $60,201.00 U.S. Currency*, 291 F. Supp. 2d 1126, 1130 (C.D. Cal. 2003) (noting that reasonable rates are those "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation") (internal quotation and citation omitted).

Once the lodestar is calculated, the resulting amount is presumptively reasonable, though courts have discretion to adjust the amount upwards or downwards. The degree of success obtained is the most important factor in determining the reasonableness of a fee award. *Hensley*, 461 U.S. at 434-36; *Warnock*, 397 F.3d at 1026. A party seeking an adjustment to the lodestar bears the burden of proving that such an adjustment is necessary. *Blum*, 465 U.S. at 897. Claimants do not seek any upward adjustment to the lodestar amount calculated using hourly rates for attorneys in Iowa of similar skill and experience; neither do Claimants believe there is any basis for departing downward from the lodestar amount.

**A.      Compensation Is Sought for Hours Reasonably Expended.**

Claimants were represented by three sets of lawyers at different stages of this case. Ms. Hinders was represented by Mike Bovee prior to filing an Answer with this Court and in attempts to resolve the case without litigation, by Jim Benz as local counsel in this Court, and by attorneys from the Institute for Justice once it became clear that discovery and a trial were imminent. As demonstrated below, the time expended by those lawyers (and paralegals) for

which they are seeking compensation has been reasonable and reflects the exercise of reasonable billing judgment.

### i. Local Counsel

Soon after Ms. Hinders learned that the IRS had seized her company's bank account, she contacted Mike Bovee to contest the seizure and seek redress. *See* Hinders Decl. ¶ 2. As the case proceeded and litigation appeared likely, Mr. Bovee brought in attorney Jim Benz because he was admitted to practice before this Court. *Id.* ¶ 5 . Messrs. Bovee and Benz are collectively referred to hereafter as "local counsel." Local counsel have known Ms. Hinders for many years and were sympathetic to the tremendous hardship she was under as a result of the seizure. They have chosen not to seek reimbursement for any fees or costs incurred prior to the Institute's taking over the case and, therefore, no request for fees on their behalf is made in this motion.

### ii. Institute for Justice

In August 2014, the Institute for Justice took over Ms. Hinders' case. Institute attorneys and paralegals devoted more than 486 hours to defending Claimants against the Government's forfeiture action. Through the exercise of billing judgment, the time has been reduced in this petition to 298.5 hours. *See* Ex. G (Institute for Justice time records); Salzman Decl. ¶ 16.

Through the exercise of billing judgment, counsel has conducted a line-by-line review of each time entry and has decreased the total hours for which attorney and paralegal fees are sought by nearly 188 hours to ensure that no unproductive, excessive, or redundant time is included. *See* Salzman Decl. ¶ 17; *see also* Hottot Decl. ¶ 8; Ex. D ("Gammon Decl.") ¶ 7 & Ex. E ("Dainsberg Decl.") ¶ 6. For example, counsel reduced actual travel time by more than half and eliminated all time for any second attorney that traveled from the Institute's Virginia or Washington offices to Iowa to work on the case. Salzman Decl. ¶ 17. In addition, many time

entries were excluded as potentially redundant, including substantial hours for both Mr. Salzman and Mr. Hottot where both attorneys were present for meetings that might plausibly have been covered by a single attorney. Salzman Decl. ¶ 17; Hottot Decl. ¶ 8. In addition, although both Mr. Salzman and Mr. Hottot were present for depositions of Ms. Hinders and her accountant, only one attorney has billed for that time—and the costs for only a single attorney for travel have been billed despite costs for two being incurred by the Institute. Salzman Decl. ¶ 17. Significant research time spent by Mr. Salzman and Mr. Hottot was eliminated for matters that were not pursued, for instance, about various bases on which a motion to dismiss or early summary judgment might have been possible. Salzman Decl. ¶ 17; Hottot Decl. ¶ 8. Both Emily Gammon and Casey Dainsberg, paralegals who assisted on the case, reduced their hours to account for activities that might be deemed redundant, excessive, or where their tasks were insufficiently documented in the Institute's billing records. Gammon Decl. ¶ 7; Dainsberg Decl. ¶ 6. As a result of these decreases and exclusions, approximately 188 total hours of attorney and paralegal time—or roughly 39 percent of the total time expended—has been excluded in the exercise of billing judgment. Salzman Decl. ¶ 16.

Detailed time records are included with this motion, which not only detail each of the activities involved in the time expended for each attorney and paralegal, but indicate and total those hours according to the major categories of work specified by Local Rule 54.1(a). The categories are (1) Drafting pleadings, motions, and briefs; (2) Legal research; (3) Investigation & Discovery; (4) Interviewing; (5) Trial preparation; and (6) Trial. Since no trial took place in this case, no hours have been incurred for that category of work.

Claimants seek an award of fees to the Institute for Justice at a reasonable rate for the 298.5 hours of time reasonably expended in this case. As demonstrated further below, the Institute for Justice is entitled to $71,173.75 in fees, which breaks down as follows:

**Larry Salzman**—106 hours. Mr. Salzman was lead counsel on the case with overall responsibility for litigation strategy and managing the legal team. Mr. Salzman met with Mr. Hinders in Spirit Lake, Iowa, several times and reviewed and edited the work of others on the legal team. He did substantial research on all issues in the case, had primary responsibility for drafting written discovery, defended the deposition of Carole Hinders, and communicated with local counsel, opposing counsel, and potential witnesses. He also prepared the present motion for attorneys' fees and expenses. In terms of major work categories, Mr. Salzman expended, after time reduced exercising billing judgment, 14.5 hours on drafting; 20.5 hours interviewing; 51 hours on investigation and discovery; 16 hours on legal research; and 4 hours on tasks reasonably considered preparation for the scheduled trial. At $275 per hour, the attorney fees attributable to Mr. Salzman's work are $29,150.

**Wesley Hottot**—137.95 hours. Mr. Hottot also performed substantial research on all issues of the case. He had primary responsibility for analyzing and responding to the government's written discovery requests, which had progressed substantially to completion at the time the government notified Ms. Hinders that it wished to voluntarily dismiss its case. Mr. Hottot also expended significant time pursuing third-party discovery with Northwest Bank, which would have been a necessary witness at any trial or in support of a summary judgment motion. Mr. Hottot prepared for and defended the deposition of Ms. Hinders' accountant, Jim Simmons. Mr. Hottot made multiple trips to Iowa for investigation and discovery, although only one of those trips is included in his billing records. In terms of major work categories, Mr.

Hottot expended, after time reduced exercising billing judgment, 23.65 hours on drafting; 8.9 hours interviewing; 88.2 hours on investigation and discovery; 12.5 hours on legal research; and 4.7 hours on tasks reasonably considered preparation for the scheduled trial. At $275 per hour, the attorney fees attributable to Mr. Hottot's work are $37,936.25.

**Emily Gammon**—28.5 hours. Ms. Gammon is a paralegal with the Institute for Justice in Virginia, who assisted counsel with various research projects and the formatting and filing of all court papers. Ms. Gammon reasonably expended 28.5 hours working on the case, after omitting certain administrative and clerical tasks. Claimant requests a rate of $75 per hour as reasonable for the work of a paralegal in this District. At $75 per hour, the paralegal fees attributable to Ms. Gammon's work are $2,137.50.

**Casey Dainsberg**—26 hours. Ms. Dainsberg is a paralegal with the Institute for Justice in Washington State, who assisted counsel with various research projects and discovery. Ms. Gammon reasonably expended 26 hours working on the case, after omitting certain administrative and clerical tasks. Claimant requests a rate of $75 per hour as reasonable for the work of a paralegal in this District. At $75 per hour, the paralegal fees attributable to Ms. Dainsberg's work are $1,950.

The Institute's time records for Mr. Salzman, Mr. Hottot, Ms. Gammon, and Ms. Dainsberg, detailing particular tasks performed and the hours spent on each, and summarized by major category of work, are contained in Exhibit G. *See also* Salzman Decl. ¶ 7 (describing method for compiling time records).

## B. The Requested Hourly Rates Are Reasonable.

The Eighth Circuit has held that a reasonable hourly rate is a rate that lawyers of comparable skill and experience can reasonably expect to command for similar services in the

prevailing community. *Warnock*, 397 F.3d at 1027; *see also Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014) (same). Other circuits have also held that attorneys' fees are to be calculated according to prevailing market rates in the relevant community. *See, e.g.*, *United States v. One Star Class Sloop Sailboat*, 546 F.3d 26, 40 (1st Cir. 2008); *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987); *Scales v. J.C. Bradford & Co*., 925 F.2d 901, 909-10 (6th Cir. 1991); *People Who Care v. Rockford Bd. of Educ*., 90 F.3d 1307, 1310 (7th Cir. 1996); *Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 404 (D.C. Cir. 1986). The prevailing market rate is the benchmark of a reasonable hourly rate even when an attorney charges a discounted rate or offers representation *pro bono*. *See Blum*, 465 U.S. at 895 (holding that fee awards under 42 U.S.C. § 1988, worded similarly to Section 2465(b), "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel").

The Institute for Justice is nationally recognized for its constitutional litigation and work in defense of property owners who have been unfairly targeted by civil forfeiture laws. Lead Counsel Larry Salzman has litigated several "structuring" cases with substantial similarities to the present case. Salzman Decl. ¶ 2. As set forth in his declaration, Mr. Salzman has eight years of litigation experience and has co-authored a report on civil forfeiture abuses. *Id*. Wesley Hottot has been practicing for six years. Hottot Decl. ¶ 2. He has significant experience in federal court litigation, discovery, and motions practice. *Id*. ¶ 4.

Rates of $275 per hour for Messrs. Salzman and Hottot are appropriate in this case based upon prevailing rates in the community for attorneys of similar experience. These rates are supported by the declaration of Kristina Gigstad, an attorney who has practiced in the Spirit Lake community since 2009, who has responsibility for hiring outside counsel on behalf of her firm

for litigation matters, and who knows the hourly rates of lawyers in Iowa. *See* Ex. F ("Gigstad Decl.") ¶ 2-3, 6. It is Ms. Gigstad's opinion that Mr. Salzman and Mr. Hottot would command an hourly rate of $275 in Iowa for the work performed in this case. *Id*. at 9. Rates of $275 per hour for Messrs. Salzman and Hottot are therefore rates "prevailing in the community" that lawyers of comparable skill and experience can reasonably expect to command. *Warnock*, 397 F.3d at 1027 (internal quotation and citation omitted).

A reasonable attorneys' fee award should also include the work of paralegals. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *see also Rural Water Sys. No. 1 v. City of Sioux Center*, 38 F. Supp. 2d 1057, 1063 (N.D. Iowa 1999) (granting fees for paralegal services). Emily Gammon and Casey Dainsberg are Institute for Justice paralegals who assisted the attorneys in this case, and a reasonable rate of $75 per hour is sought for their work. That rate is supported by the experience and opinion of local attorney Kristina Gigstad, s*ee* Gigstad Decl. ¶ 11, who has hired and worked with paralegals in Iowa. The rate is also supported by the *2015 National Utilization and Compensation Survey Report*, published by the Association of Legal Assistants & Paralegals. *See* Ex. H. That study shows that the average rate for paralegals in the "Plains States" region, which includes Iowa, was $115 per hour in 2014. *See id.* at 3, 9.

## III. Claimants Are Entitled to Reasonable Litigation Costs.

CAFRA allows for "litigation costs reasonably incurred" to also be recovered along with attorneys' fees. 28 U.S.C. § 2465(b)(1)(A); *see United States v. One 2008 Toyota Rav 4*, No 2:09-cv-05672-SVW-PJW, 2012 WL 5272281, at *1 (C.D. Cal. Oct. 18, 2012). Expenses paid in this case include *pro hac* application fees for Mr. Salzman and Mr. Hottot; process server costs; postage and mailing costs; fees for transcription of depositions; and travel expenses. As noted above, despite Mr. Salzman and Mr. Hottot both traveling to Iowa on several occasions,

costs for only one attorney are sought here.  Expenses incurred by the Institute for Justice on behalf of Claimants total $4,057.63, and are itemized and attached as Exhibit I.

IV.     **Claimants Are Entitled to Pre- and Post-Judgment Interest on Seized Currency.**

When returning seized currency to its rightful owner, the Government must also disgorge interest "actually paid to the United States from the date of seizure" that resulted from the investment of the Claimants' funds in an interest-bearing account.  28 U.S.C. § 2465(b)(1)(C)(i). Where the money was not invested in an interest-bearing account, the claimant is entitled to "an imputed amount of interest that such currency . . . would have earned at the rate applicable to the 30-day Treasury Bill."  28 U.S.C. § 2465(b)(1)(C)(ii); *see also Kadonsky v. United States*, 3 Fed. Appx. 898, 904 n.7 (10th Cir. 2001) (rejecting a claim to pre-judgment interest in a pre-CAFRA case while noting that pre-judgment interest is required in civil forfeiture cases filed after August 23, 2000).  Accordingly, Claimants are entitled to interest on the seized funds calculated in the manner described above from May 22, 2013, until the date of this Court's order dismissing the Complaint on January 9, 2015.  In addition, "post-judgment interest, as set forth in [28 U.S.C. § 1961]" is due on the seized currency from the date of this Court's judgment until the funds are actually returned.  28 U.S.C. § 2465(b)(1)(B).  Section 1961 provides that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  The rate of the 1-year constant maturity Treasury Note on the date of this Court's order of dismissal in this case was 0.22%.  *See* Board of Governors of the Federal Reserve, *Selected Interest Rates (Weekly)* (January 9, 2015), http://www.federalreserve.gov/releases/h15/20150112/.

## CONCLUSION

Based on the foregoing, Claimants hereby request:

(a) an award of $71,173.75 in attorneys' and paralegal fees to be paid to the Institute for Justice in compensation for its work on this case;

(b) an award of $4,057.63 in reasonable litigation costs to be paid to the Institute for Justice as reimbursement for expenses incurred; and

(c) an award of pre- and post-judgment interest to be paid to Mrs. Lady's, Inc., on the funds seized from its bank account on May 22, 2013, to the date of the property's return, calculated pursuant to the method mandated by 28 U.S.C. § 2465(b)(1).


RESPECTFULLY SUBMITTED this 4th Day of February 2015.

**INSTITUTE FOR JUSTICE**

By:  /s/ Lawrence G. Salzman
Lawrence G. Salzman (CA Bar No. 224727)*
Institute for Justice
901 Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)
lsalzman@ij.org

Wesley Hottot (WA Bar No. 47539)*
Institute for Justice
10500 NE 8th Street, Suite 1760
Bellevue, WA 98004-4309
(425) 646-9300
(425) 990-6500 (fax)
whottot@ij.org

*Attorneys for Claimants*

* Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Claimants' Motion for Attorneys' Fees, Costs, and Interest and related brief and exhibits were filed through the Electronic Court Filing system on February 4, 2015, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

INSTITUTE FOR JUSTICE

Dated: February 4, 2015                    By:   /s/ Lawrence G. Salzman