# EXHIBIT B

## DECLARATION OF

## LAWRENCE SALZMAN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. C13-4102-LTS |
| | ) | |
| vs. | ) | |
| | ) | |
| THIRTY-TWO THOUSAND EIGHT | ) | |
| HUNDRED TWENTY DOLLARS AND | ) | |
| FIFTY-SIX CENTS ($32,820.56) | ) | |
| IN UNITED STATES CURRENCY | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and concerning | ) | |
| | ) | |
| CAROLE HINDERS and | ) | |
| MRS. LADY'S INC. | ) | |
| | ) | |
| Claimants. | ) | |

---

## DECLARATION OF LAWRENCE SALZMAN IN SUPPORT OF CLAIMANTS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INTEREST

---

I, Lawrence Salzman, hereby declare and state as follows:

1.     I am an Attorney at the Institute for Justice, 901 N. Glebe Rd., Suite 900, Arlington, Va.

2.     I graduated from the University of San Diego School of Law in 2002, where I served as Assistant Editor of the San Diego Law Review. After graduating from law school, I clerked for two years for Judge Bohdan A. Futey on the U.S. Court of Federal Claims. In 2004, I joined the Sacramento, Calif., law firm Pacific Legal Foundation, where my practice was dedicated to constitutional issues involving property rights. I left the firm for a position with a telecommunications firm in 2007. In 2011, I returned to constitutional litigation and joined the

Institute for Justice, where I have since developed a particular expertise in federal civil forfeiture law and procedure, litigating cases involving both personal and real property. The present case is the fourth "structuring"-related case I have litigated during the past 2 years. I am co-author of *Inequitable Justice*, a report published in 2011 documenting the misuse of federal civil forfeiture law by federal and state law enforcement agencies. In total, I have been a practicing attorney for eight years.

3. I am an active member in good standing of the Bar of California to which I was admitted on April 29, 2003. I am also admitted to practice in the United States Supreme Court; the United States Courts of Appeals for the Federal Circuit, the Sixth Circuit, and the Fourth Circuit; the United States Court of Federal Claims; and the United States District Courts for the Central and Eastern Districts of California, the Eastern District of Michigan, and the Western District of Wisconsin. I am admitted *pro hac vice* in the Northern District of Iowa for purposes of the above-captioned case.

4. I have regularly published opinion pieces on constitutional law and civil forfeiture in national and regional print media during the past four years.

5. No attorney of the Institute for Justice, including myself, has ever been suspended, disbarred, or been the subject of an investigation in any disciplinary proceedings.

6. I maintained contemporaneous records of my time spent on the above-captioned case using the Institute for Justice's record-keeping system. A detailed record of the time spent, itemized by particular activity, is attached to the Motion for Attorneys' Fees, Costs, and Interest filed in this case, as Exhibit G.

7. Each case in the Institute for Justice's record-keeping system is coded by a sequential case number and a short hand case name. The case code for this litigation is 1194 and

2

it is referred to within the Institute as "Iowa Forfeiture." Activities performed by employees are also coded by category. Litigation-related activities are assigned a code of 1, for instance, while media-related activities are coded as 7. In compiling the time records for each attorney, the Institute for Justice eliminated any entries not coded "1" for litigation.

8.      The time records were compiled from August 2014 to the present. My co-counsel Wesley Hottot and I first met in person with Carole Hinders in Spirit Lake, Iowa in August 2014, in order to collect information about the case and interview Ms. Hinders, and the Institute for Justice executed a formal representation agreement with her after that meeting.

9.      On at least two occasions, I conversed by phone with opposing counsel to explain why Ms. Hinders was not guilty of structuring her funds and why the forfeiture was misguided and unjust, and to discuss the possibility of settlement prior to commencing full discovery and preparation for further proceedings. During those conversations I indicated to the Government that the Institute could accept a settlement that included Ms. Hinders receiving all of her money back, and I expressed the Institute's willingness to consider waiving any claim to attorney fees if that occurred before meaningful time was spent on litigation. Despite acknowledging that it did not believe that Ms. Hinders' funds were derived from any illicit activities, the Government rejected any proposal that it considered as "all or nothing."

10.      I made three trips from Virginia to Iowa to interview Ms. Hinders, to investigate the case, and prepare for and participate in depositions.

11.      For the purposes of establishing prevailing market rates in Iowa, the Institute for Justice relied, in part, on the hourly rates reported for paralegals in the *2015 National Utilization and Compensation Survey Report*, published by The Association of Legal Assistants & Paralegals. The Survey is attached as Exhibit H.

3

12.     In addition, the Institute for Justice relied on the opinion of Kristina Gigstad, an attorney with the Sackett Law Firm in Spirit Lake, Dickinson County, Iowa. The above-captioned civil forfeiture action originated in Dickinson County, where Claimant Carole Hinders is a resident. Ms. Gigstad has been practicing in region since 2009 and is familiar with billing rates of attorneys in the area. *See* Ex. F (Declaration of Kristina Gigstad).

13.     Based on those sources, the Institute for Justice has determined that hourly rates of $275 per hour for Attorneys Larry Salzman and Wesley Hottot, and $75 per hour for paralegals Emily Gammon and Casey Dainsberg are reasonable.

14.     As lead counsel, I performed research on all legal and factual issues of the above-captioned case, coordinated with Ms. Hinders and local counsel to develop the case record, had primary responsibility for drafting all written discovery, defended the deposition of Carole Hinders, and worked on various settlement possibilities. I also prepared the attached motion for attorneys' fees and supporting exhibits.

15.     I prepared the record of litigation expenses in this case incurred by the Institute for Justice on behalf of Claimants. A true and correct reporting of those expenses is attached to the Motion for Attorneys' Fees, Costs, and Interest filed with this declaration, as Exhibit I.

16.     I reviewed the time records of Mr. Hottot, Ms. Gammon, and Ms. Dainberg, which totaled more than 486 hours. I conferred with them concerning their time entries and recommended reductions which, after the exercise of the billing judgment, totaled 298.5 hours. This is a reduction of approximately 39% of the time actually expended on the case.

17.     I conducted a line-by-line review of each of my time entries on the above-captioned case and eliminated or decreased entries to avoid unproductive, excessive, or redundant billing entries. Approximately 85 hours were eliminated from my time through the

4

exercise of my billing judgment, including reducing all travel time by 50 percent and completely eliminating two trips by me to Iowa to meet with Ms. Hinders, her accountant, and others during the period of discovery. Further, I eliminated time for all research on matters that were not pursued and for meetings with other staff or other counsel where it might be plausibly argued that only one attorney could have accomplished the task alone. I also reduced a substantial number of hours pertaining to any matter for which my co-counsel, Wesley Hottot, had primary responsibility. Likewise, I took care to ensure that time has only been billed for a single attorney even when in actual fact Mr. Hottot and I were engaged in tasks together, including traveling to Iowa for investigation or discovery, meeting with clients, attending other meetings, and sitting for depositions. The result has been a significant reduction from the 191 hours actually expended on the case to 106—a 45% cut—as fees and costs that are "reasonably incurred" pursuant to the Civil Asset Forfeiture Reform Act. *See* 28 U.S.C. § 2465(b).

18.     The hours reasonably expended in this case are itemized in Exhibit G. Pursuant to LR 54.1, those hours are also subtotaled and categorized by the major categories of work listed in that rule. I reasonably expended 14.5 hours drafting; 20.5 hours interviewing clients and potential witnesses; 51 hours on investigation and discovery; 16 hours on legal research; and 4 hours on tasks related to trial preparation.

19.     At the reasonable hourly rate of $275, the Claimants reasonably incurred $29,150 for my time in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of February, 2015.

Lawrence Salzman

5